DENISE E. B. ST. JAMES AND TIMOTHY T. B. ST. JAMES, INDIVIDUALLY AND DBA LAS VEGAS CHIRO-PRACTIC CENTER, APPELLANTS, · v. DIVERSIFIED COMMERCIAL FINANCE CORPORATION, RESPONDENT.

No. 16397

February 20, 1986 ·                                714 P.2d 179

*Fadgen, Lovell, Bilbray, Potter & Gewerter* and *David Schieck*, Las Vegas, for Appellants.

*Wanderer & Wanderer* and *Sally Loehrer*, Las Vegas, for Respondent.

# OPINION

By the Court, Young, J.:

On February 22, 1982, Denise E. B. St. James and Timothy T. B. St. James, dba Las Vegas Chiropractic Center (appellants), purchased a debt collection service from National Revenue Corporation (NRC). John Walker, an NRC employee, sold the service to appellants and had them sign two promissory notes payable to respondent Diversified Commercial Finance Corporation (Diversified) to finance the purchase.

Diversified acknowledges that it provides financing for NRC and facilitates that financing by supplying NRC with preprinted promissory notes for NRC's customers to sign. The promissory notes contained the following preprinted provision:

> Borrower recognizes and acknowledges that all funds borrowed on this Promissory Note will be paid to National Revenue Corporation (NRC). Borrower authorizes NRC to pay to Lender [Diversified] any credits or refunds that may become due Borrower to the extent of any outstanding principal amount and interest due under this Promissory Note, with any remaining balance from said credit or refund going to Borrower.

Appellants stopped making payments on the notes after several months because NRC allegedly was not providing the services promised. Diversified filed a complaint seeking the balance due on the notes ($3,940.00) plus interest, costs and attorney's fees. Appellants answered, setting forth as an affirmative defense failure of consideration, i.e., NRC's failure to provide the services promised in the service agreement. The district court granted Diversified's motion for summary judgment on February 1,

1985. The court concluded that Diversified was a holder in due course of the notes and therefore immune from the defenses available against the seller, NRC.

A holder in due course of an instrument is one who takes the instrument (1) for value, (2) in good faith and (3) without notice that it is overdue or has been dishonored or of any defenses or claims to it. *See* NRS 104.3302(1). Payees may be holders in due course. NRS 104.3302(2). Holder in due course status operates to insulate the holder from certain defenses to the instrument of any party with whom the holder has not dealt. NRS 104.3305 (hereafter referred to as "§ 3-305"). However, § 3-305 makes the holder subject to all defenses of a party with whom the holder has dealt.

Appellants contend that they may assert the defense of failure of consideration against Diversified because they are a party with whom the holder—Diversified—has dealt. Under traditional analysis, however, appellants' argument fails because Diversified did fulfill its obligation on the contract: It paid NRC for the services NRC was to provide to appellants. There was no failure of consideration with respect to the transaction because Diversified was not obligated to perform the collection service but only to pay NRC. The failure of consideration allegedly arose in the transaction between appellants and NRC.

Many jurisdictions have broken with this traditional analysis of the holder in due course rule and have-limited its application either by statutory enactment or judicial adoption of the close connection doctrine. *See, e.g.*, Commercial Credit Co. v. Childs, 137 S.W.2d 260 (Ark. 1940) (consumer transaction for purchase of automobile; closely-connected assignee of note not a good faith holder in due course because for "all intents and purposes [it was] a party to the agreement and instrument from the beginning"); Commercial Credit Corp. v. Orange County Mach. Wks., 214 P.2d 819 (Cal. 1950) (sale of mechanical press; finance company not in good faith where it actively participated in transaction by supplying forms to seller); Unico v. Owen, 232 A.2d 405 (N.J. 1967) (consumer sale of stereo and record album package; financier not holder in due course because not a good faith purchaser where it participated in the underlying transaction); Westfield Investment Co. v. Fellers, 181 A.2d 809 (N.J.Super.Ct. Law Div. 1962) (door-to-door sale of food plan and freezer; finance company subject to defenses against seller because inextricably linked to seller by supplying preprinted promissory notes and otherwise participating in the transaction). The close connection doctrine holds lenders subject to the defenses that a buyer has against his seller where the lender and seller are closely connected. The Uniform Consumer Credit

Code (U3C) and Federal Trade Commission (FTC) rules both contain provisions which make not only assignees of consumer credit paper but also direct lenders in consumer transactions subject to the consumer's claims and defenses against the seller. *See* U3C §§ 3.404, 3.405; FTC Holder in Due Course Regulations, 16 C.F.R. § 433.2 (1978).

The FTC rule would have easily disposed of the case at bar had it involved a consumer transaction. One commentator has noted that the omission of nonconsumer transactions from the rule is unfortunate since the reasons for the rule appear equally applicable in both kinds of transactions.[1] *See* 1 J. Fonseca and P. Teachout, *Handling Consumer Credit Cases* § 2.18, at 64 n. 7 (1980). We can discern no reason to limit the doctrine to consumer transactions; we therefore adopt the close connection doctrine with respect to all transactions where the buyer can demonstrate a close connection between the seller and lender.

Whether a lender and seller are closely connected will necessarily depend upon the facts of each case. We adopt the test articulated by the New Jersey Supreme Court in Unico v. Owen, 232 A.2d 405 (N.J. 1967) for determining whether such a connection exists:

> [W]hen it appears from the totality of the arrangements between [seller] and financer that the financer has had a substantial voice in setting standards for the underlying transaction, or has approved the standards established by the [seller], and has agreed to take all or a predetermined or substantial quantity of the negotiable paper which is backed by such standards, the financer should be considered a participant in the original transaction and therefore not entitled to holder in due course status.

*Unico,* 232 A.2d at 417.

We conclude that the district court erred in granting summary judgment to Diversified. Rule 56(c) of the Nevada Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is

---

[1]Advocates of the close connection doctrine reason that lenders are better able to investigate the integrity of the sellers whose transactions they finance and to bear the costs of the seller's nonperformance. *See generally* Note, *Direct Loan Financing of Consumer Purchases,* 85 Harv.L.Rev. 1409 (1972).

no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The record in this case shows that a genuine issue of material fact, whether Diversified and NRC are closely connected, remains to be tried. The promissory notes themselves, as exhibits to the pleadings, indicate that Diversified may have been in reality a party to the service agreement. The notes were supplied to NRC by Diversified and provided in preprinted type that the money loaned by Diversified to appellants would be paid directly to NRC. In addition, the notes were prepared around the same time as the NRC service agreement by an NRC employee, John Walker. Walker's name appears in the upper right-hand corner of the notes as well as on the service agreement. Finally, in preprinted type the notes designate that a yellow copy should be kept by NRC. We conclude that the promissory notes on their face were sufficient to demonstrate that a material fact remained to be tried. Diversified was not, therefore, entitled to judgment as a matter of law. *See* In re Hilton Hotel, 101 Nev. 489, 706 P.2d 137 (1985).

Accordingly, we reverse and remand this matter for further proceedings in conformance with this opinion.

MOWBRAY, C. J., and SPRINGER, GUNDERSON, and STEFFEN, JJ., concur.