**MGM DESERT INN, INC., dba Desert Inn Hotel & Casino, Plaintiff,**

v.

**William E. SHACK, Jr., Defendant.**

**No. CV–S–91–487–PMP (LRL).**

United States District Court, D. Nevada.

Jan. 12, 1993.

Anthony N. Cobot, Lionel, Sawyer & Collins, Las Vegas, NV, for plaintiff.

Cal Potter, Beverly Salhalnick, Las Vegas, NV, Terry V. Lehr, San Diego, CA, for defendant.

## ORDER

PRO, District Judge.

Before the Court is Plaintiff MGM Desert Inn, Inc.'s ("MGM") Motion for Summary Judgment (# 36), filed November 17, 1992. Defendant William E. Shack, Jr. filed an Opposition (# 41) on December 7, 1992, and MGM filed its Reply (# 44) on January 4, 1993.

During the months of July and August, 1990, Shack negotiated, executed, and delivered eight checks to the Desert Inn Hotel & Casino. These checks were made payable to "MGM–Desert Inn," and they varied in amount from a high of twenty-five thousand dollars to a low of one thousand dollars. When added together, the amount of these checks totalled $93,400. When the Desert Inn presented these checks for payment, they were returned dishonored. Shack admits to owing MGM $93,400 on the checks. See Defendant's Answer, ¶ 1.

MGM thereafter filed an action in this court to recover the amount of the checks. It argues that these checks are "negotiable instruments" under Nevada law. It contends that Shack is the drawer of these instruments, and is liable on these checks as a matter of law because he failed and refused to pay the amount of the checks after the checks were returned dishonored by his bank. It also argues that these checks are "credit instruments" under Nevada law, and under NRS 463.367, they are enforceable as a matter of law. Finally, MGM argues that it is entitled to collect from Shack all costs of collection, including attorney's fees.

In his opposition to the motion for summary judgment, Shack argues (1) MGM is not entitled to judgment as a matter of law, and (2) questions of material fact remain that preclude this Court from awarding summary judgment to MGM. He first contends that there is a material question of fact as to whether the checks were due and payable, because he alleges that he and MGM had an understanding that he had a "rolling debt." According to Shack, a rolling debt is where a person with a marker that comes due takes out another marker "to freshen the old one." He contends that there is an issue of fact in that "if they are freshened markers the agreement is not enforceable because plaintiff has changed the rules of the agreement to 'freshen' or 'roll' markers. Although defendant may have signed the instruments in question, payment on the instruments is not due." See Defendant's Opposition to Plaintiff's Motion for Summary Judgment at 3–4.

Next, Shack argues that there is a material question of fact as to whether he is obligated to pay attorney's fees. Shack argues that MGM is not entitled to any attorney's fees. He argues that the checks are contracts of adhesion, and as such, the attorney's fees provisions on the face of the check are unenforceable. He also argues that, in any case, no attorney's fees can be awarded on the two checks with a face value of over $20,000.

### I. SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there

is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The party moving for summary judgment has the initial burden of showing the absence of a genuine issue of material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir.1982). Once the movant's burden is met by presenting evidence which, if uncontroverted, would entitle the movant to a directed verdict at trial, the burden then shifts to the respondent to set forth specific facts demonstrating that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). If the factual context makes the respondent's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *California Arch. Bldg. Prod. v. Franciscan Ceramics*, 818 F.2d 1466, 1468 (9th Cir.1987), *cert. denied*, 484 U.S. 1006, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988).

If the party seeking summary judgment meets this burden, then summary judgment will be granted unless there is significant probative evidence tending to support the opponent's legal theory. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968); *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270 (9th Cir.1979). Parties seeking to defeat summary judgment cannot stand on their pleadings once the movant has submitted affidavits or other similar materials. Affidavits that do not affirmatively demonstrate personal knowledge are insufficient. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir.1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). Likewise, "legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment." *Id.*

■ A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth. *See Admiralty Fund v. Hugh Johnson & Co.*, 677 F.2d 1301, 1305–06 (9th Cir.1982); *Admiralty Fund v. Jones*, 677 F.2d 1289, 1293 (9th Cir.1982).

All facts and inferences drawn must be viewed in the light most favorable to the responding party when determining whether a genuine issue of material fact exists for summary judgment purposes. *Poller v. CBS, Inc.*, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). After drawing inferences favorable to the respondent, summary judgment will be granted only if all reasonable inferences defeat the respondent's claims. *Admiralty Fund v. Tabor*, 677 F.2d 1297, 1298 (9th Cir.1982).

The trilogy of Supreme Court cases cited above establishes that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp.*, 477 U.S. at 327, 106 S.Ct. at 2555 (quoting Fed.R.Civ.P. 1). *See also Avia Group Int'l, Inc. v. L.A. Gear Cal.*, 853 F.2d 1557, 1560 (Fed.Cir.1988).

## II. ANALYSIS

Shack makes two arguments. First, although he acknowledges that he owes MGM $96,400, he argues that the debt has not become due, and presumably, that this suit to compel payment is premature. Second, he argues that he is not liable for MGM's attorney's fees.

### A. *Liability on the Checks*

■ With respect to Shack's contention that his debt was not due when MGM presented the eight checks to Shack's bank for payment, it is clear that the documents that Shack tendered to MGM in the sum amount of $96,400 are negotiable instruments that

have been negotiated to MGM. See NRS §§ 104.3104; 104.3202; *Unruh v. Nevada National Bank*, 88 Nev. 427, 428–29, 498 P.2d 1349 (1972). It is also clear that under Nevada's interpretation of Article 3 of the Uniform Commercial Code, MGM is considered a "holder" of negotiable instruments, and is therefore subject to all defenses that would be available in an action on a simple contract. *See* NRS §§ 104.-3301; 104.3306.[1]

Shack testified at his deposition that approximately three to five years ago, he entered into an unwritten gambling arrangement with the Desert Inn. According to Shack, this arrangement allowed Shack to write a check, receive the value of that check in casino "markers," get chips for those markers, and gamble with those chips. According to Shack, if he won, he would take his winnings and "buy" his check back. If he lost, he would presumably add cash to make up what he had lost, and would then buy the check back with the combination of cash and remaining chips. In this way, Shack testified, the check never became due and payable, because the date of the check was always "fresh." Shack argues that MGM's current attempt to collect on these checks represents a change "in the rules of the agreement to 'freshen' or 'roll' markers, [and that] although defendant may have signed the instruments in question, payment on the instruments is not due.

█ Taken in the light most favorable to the non-movant, Shack argues that he had an oral contract with the Casino wherein they agreed to advance him money with which to gamble, he agreed to write them a check to cover this advance, but they agreed not to present this check for payment. He contends that when MGM presented these checks for payment, it violated this oral contract. Nevada's Statute of Frauds, codified at NRS § 111.220, renders this argument meritless. This statute requires a writing for every agreement that, by its terms, cannot be performed within one year of its making. Taking Shack's own testimony, he entered into this agreement with a representative of the Desert Inn between three and five years ago. Because he has not provided a written note or memorandum containing the terms of this contract, nor has even alleged the existence of such a writing, this agreement must be considered void. Therefore, MGM's presentment of this check for payment cannot be considered a violation of Shack's alleged understanding.[2]

What remains, then, are the eight checks in which Shack promised to pay MGM a total of $96,400. Shack does not dispute that he agreed to pay the Desert Inn the sums represented on the face of each check. He acknowledges that he wrote these checks.[3] NRS 104.3122(3) clearly provides that a cause of action against a drawer of a draft accrues upon demand following dishonor of the instrument, and that notice of dishonor is deemed a demand. Because these eight checks were dishonored, and because MGM thereafter demanded payment, Shack is liable on these checks.

### B. *Attorney's Fees*

Shack argues that MGM is not entitled to summary judgment on its request for attorney's fees. This Court disagrees and finds that there are no material questions of fact and that MGM is entitled to judgment as a matter of law on the issue of attorney's fee.

█ First, the Court rejects Shack's argument that MGM is not entitled to attorney's fees because the checks were adhesion contracts, thus rendering the attor-

---

1. Note that MGM is not a holder in due course, because it is the immediate party to the underlying transaction, and presumably is aware of any defenses to the contract. *See St. James v. Diversified Commercial Finance Corp.*, 102 Nev. 23, 25, 714 P.2d 179 (1986); *Saka v. Sahara–Nevada Corp.*, 92 Nev. 703, 705–06, 558 P.2d 535 (1976).

2. Given the effect of NRS § 111.220, it is unnecessary for this Court to make a finding as to whether such an oral agreement ever in fact existed.

3. Shack has testified that he does not remember signing these checks. He admits, however, that he owes MGM the amount represented by the sum of the checks.

ney's fees provision on the front of the checks void.[4] Nevada courts have defined an adhesion contract as "a standardized contract form offered to consumers of goods and services essentially on a 'take it or leave it' basis, and under such conditions that the consumer cannot obtain the desired product or service except by acquiescing to the form of the contract." *Obstetrics & Gynecologists Wixted v. Pepper,* 101 Nev. 105, 107, 693 P.2d 1259 (1985). Nevada also recognizes, however, that "an adhesion contract need not be unenforceable if it falls within the reasonable expectations of the weaker or 'adhering' party and is not unduly oppressive." *Id.* at 107–08, 693 P.2d 1259 (citing *Graham v. Scissor-Tail, Inc.,* 28 Cal.3d 807, 171 Cal.Rptr. 604, 611–12, 623 P.2d 165, 172–73 (1981)). This Court finds that even if the Nevada Supreme Court would find these checks to be adhesion contracts,[5] it would not therefore refuse to enforce them, because the attorney's fees provisions on the face of the check fall within the reasonable expectations of Shack, and are not unduly oppressive. *See Mallin v. Farmers Ins. Exchange,* 839 P.2d 105 (Nev.1992) (stating that "although unconscionable contract provisions are voidable, adhesion contracts are not unenforceable per se").

 Shack also argues that one check, Exhibit number 5 of Plaintiff's Complaint, in the amount of $25,000, does not contain form language providing for attorney's fees. He argues that NRS 18.010 prohibits an award of attorney's fees on this check because this statute limits attorney's fees to situations where a plaintiff recovers no more than $20,000. NRS 18.010(5) states that subsections 2, 3, and 4 of 18.010 "do not apply to any action arising out of a written instrument or agreement which entitles the prevailing party to an award of reasonable attorney's fees." As Shack points out, this check does not contain a provision for attorney's fees. Nevertheless, this Court agrees with MGM that it

would have incurred the same attorney's fees and costs whether it litigated this case including check # 5, or whether it litigated the case with only checks numbered 1–4 and 6–8. Therefore, an award of reasonable attorney's fees as to Check # 5 is warranted.

IT IS THEREFORE ORDERED THAT Plaintiff MGM's Motion for Summary Judgment (# 36) is hereby Granted.

IT IS FURTHER ORDERED THAT Plaintiffs are awarded reasonable attorney's fees, in the amount of Five Thousand Dollars ($5,000).

IT IS FURTHER ORDERED that Plaintiff shall have to and including January 16, 1993, within which to submit an appropriate form of Judgment consistent with this Order.

---

**4.'** One check, number 5 in Plaintiff's complaint, does not contain the attorney's fees provision. This check is the subject of a separate argument, and this Order deals with it separately *infra.*

**5.** *See Farmers Ins. Exchange v. Young,* 108 Nev. 328, 832 P.2d 376 (1992) (citing a law review article for the proposition that in most states, the adhesion contract doctrine is confined to insurance policies).