**A.I. TRADE FINANCE, INC. Plaintiff,**

v.

**ALTOS HORNOS de VIZCAYA, S.A.,**
Laminaciones de Lesaca, S.A.,
Defendants.

No. 92 Civ. 5670 (MBM).

United States District Court,
S.D. New York.

Dec. 27, 1993.

Frank H. Loomis, Martin Domb, Hill, Betts & Nash, New York City, for plaintiff.

Juan A. Anduiza, Haight, Gardner, Poor & Havens, New York City, for defendants.

## OPINION AND ORDER

MUKASEY, District Judge.

Plaintiff A.I. Trade Finance, Inc. ("AITF") sues for payment on promissory notes issued by defendant Laminaciones de Lesaca, S.A. ("Laminaciones"), and guaranteed by defendant Altos Hornos de Vizcaya, S.A. ("Altos Hornos"). Plaintiff claims to be a holder in due course and moves for summary judgment. Defendants cross-move for summary judgment, contending that the court lacks personal jurisdiction over them, that plaintiff is not a holder in due course, and that plaintiff is subject to their defenses under U.C.C. § 3–305(2) even if the court finds that plaintiff is a holder in due course. For the reasons set forth below, plaintiff's motion for summary judgment is granted.

### I.

In 1990, Delta Brands Inc. ("Delta"), a Texas-based corporation, agreed to supply and install a line of equipment at defendants' plant in Lesaca, Spain. The plant was operated by Altos Hornos, which is the corporate parent of Laminaciones. (Def. 3(g) Stmt ¶ 2) Delta invited plaintiff AITF to participate in financing the transaction, and plaintiff agreed to do so. (Def. 3(g) Stmt ¶ 3) Plaintiff is a trade finance company specializing in the financing of international transactions. (Pl. 3(g) Stmt ¶ 1)

A representative of AITF, Richard Tull, travelled to Spain to meet with representatives of Delta, Laminaciones, and Altos Hornos. Tull actively took part in negotiating the financing terms for the transaction. (Pl. 3(g) Stmt ¶ 8; Def. 3(g) Stmt ¶ 5)

The financing terms were as follows: AITF was to finance 85% of the purchase price (ECU 2,514,207), payable semi-annually over five years, at an annual interest rate of 12 percent on the outstanding balance. Laminaciones was to issue ten promissory notes, in the form provided by AITF, to evidence the debt. The notes were to be guaranteed by Altos Hornos, and were to become payable to Delta six months after the date of Delta's shipment of the equipment. (Pl. 3(g) Stmt ¶¶ 10(a), 10(b); Def. 3(g) Stmt ¶ 9(a), 9(b))

In accordance with the agreement, Laminaciones issued a series of ten promissory notes on January 16, 1991. Altos Hornos guaranteed the notes by signing as "Guarantor: per aval" on the face of each note. As the parties had agreed, the maturity dates were left blank and were to be set after the

equipment was shipped by Delta. (Pl. 3(g) Stmt ¶ 12; Def. 3(g) Stmt ¶ 10) On February 18, 1991, Laminaciònes forwarded the notes to its New York Bank, Banco Bilbao Vizcaya, with irrevocable instructions to insert the maturity date on each note and deliver the notes to Delta upon Delta's delivery to the bank of shipping documents evidencing delivery of the equipment. (Pl. 3(g) Stmt ¶ 13; Def. 3(b) Stmt ¶ 11)

On or about April 1, 1991, Delta delivered to the bank a bill of lading showing shipment, and an invoice from Delta to Laminaciones. The amount due on the invoice was ECU 2,514,207, the entire balance owed on the contract. Based on the bill of lading, the bank calculated the maturity dates for the notes from April 1, 1991, and delivered the notes to Delta. (Pl. 3(g) Stmt ¶ 14; Def. 3(g) Stmt ¶ 13)

On April 9, 1991, as previously agreed, Delta sold and endorsed the ten notes to AITF for the discounted price of U.S. $3,081,438.68. (Pl.Ex. 13) The first note matured on September 30, 1991. AITF presented the note for payment and was paid by defendants.

It is undisputed that Delta had not shipped all of the equipment under the contract at the time it presented the shipping documentation and received the promissory notes. (Pl. 3(g) Stmt ¶ 19; Def. 3(g) Stmt ¶¶ 16, 17) When the second promissory note matured on April 1, 1992, defendants failed to pay, informing plaintiff that "due to a temporary break on the part of Delta Brands Inc. in complying with its obligations, payment of the due promissory note number 2/10 has been suspended as a precaution." (Pl.Ex. 14) Defendants contend that Delta breached the contract and caused defendants to incur damages in the amount of $2.2 million. (Def.Ex. 19) Defendants argue that their defense of breach of contract may be asserted against AITF. (Def.Mem. at 16)

Since AITF's commencement of this action, the third and fourth promissory notes have also matured and remain unpaid. (Pl. 3(g) Stmt 22, 23) AITF previously amended its Complaint to include the third promissory note, and now moves to amend the Complaint to include the fourth promissory note. The motion is granted, and this opinion and order will apply to all three overdue notes.

## II.

■ Defendants claim that their contacts with this forum are insufficient to sustain personal jurisdiction. (Def.Mem. at 35) However, plaintiff has submitted a letter, signed by representatives of both defendants, stating that "the undersigned consent to the financial obligation being governed by New York law and the place of non-exclusive jurisdiction being the state and federal courts located therein." (Pl.Ex. 6) Defendants do not deny signing this letter, but argue that it is not enforceable because "AITF is presumably contending that this letter cannot be a circumstance where it dealt with Laminaciones and Altos Hornos." (Def.Mem. at 36–37) The issue of "dealing" within the meaning of U.C.C. § 3–305(2), which is discussed below, is separate from and irrelevant to the validity of defendants' consent to jurisdiction. Defendants voluntarily signed the letter and thereby consented to this court's jurisdiction.

## III.

Plaintiff claims to be a holder in due course of the notes in question and thus immune from the defenses that defendants may have against Delta. Defendants dispute AITF's status as a holder in due course, and claim that they may assert their defenses against AITF even if AITF is found to be a holder in due course. Summary judgment is appropriate if the evidence demonstrates that "there is no genuine issue as to any material fact and [that] the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Finz v. Schlesinger,* 957 F.2d 78, 81 (2d Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 72, 121 L.Ed.2d 38 (1992). Because granting the motion denies the nonmoving party a trial on the merits, the court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *Gibson v. American Broadcasting Cos.,* 892 F.2d 1128, 1134 (2d Cir.1989). Here, no factual issues have been raised regarding plaintiff's participation in the

transaction or its status as a holder in due course. Summary judgment thus is appropriate and plaintiff's motion is granted.

### A. *"Dealt" under U.C.C. § 3–305(2)*

■ U.C.C. § 3–305(2) provides: "To the extent that a holder is a holder in due course he takes the instrument free from ... all defenses of any party to the instrument with whom the holder has not dealt...." U.C.C. § 3–305(2). Defendants contend that AITF "dealt" with Laminaciones within the meaning of § 3–305(2) when AITF participated in financing the transaction between Delta and Laminaciones, and that this subjects plaintiff to Laminaciones' defense of breach of contract.

Research discloses no cases in this Circuit or state that govern whether participation in financing a commercial transaction qualifies as "dealing" under § 3–305(2). In cases treating *consumer* credit transactions, several courts have found that any contact between a financing company and the maker of a promissory note constitutes "dealing" and subjects a financing company to the defenses proffered by the maker. *See Standard Finance Co. v. Ellis,* 3 Haw.App. 614, 617, 657 P.2d 1056, 1059 (1983) (in consumer finance case, financing company's presence at the signing of the promissory note and role in explaining terms of the note to the maker constituted "dealing"); *Unico v. Owen,* 50 N.J. 101, 112, 232 A.2d 405, 411 (1967) ("[C]onsumer goods contracts and their concurrent financing arrangements should be construed most strictly against the seller ... and against the finance company which participated in the transaction, directly or indirectly"). However, this broad interpretation of "dealing" has been rejected in cases involving *commercial* transactions. *See Cessna Finance Corp. v. Warmus,* 159 Mich.App. 706, 709–10, 407 N.W.2d 66, 68 (1987) (rejecting argument that financing company that was named as assignee in original sales contract "dealt" with maker within meaning of § 3–305(2)); *St. James v. Diversified Commercial Finance Corp.,* 102 Nev. 23, 25, 714 P.2d 179, 181 (1986) (defense arising from underlying commercial transaction could not be asserted against financing company, even

though financing company supplied preprinted promissory notes that named financing company as payee). .

■ The cases cited by defendants are inapposite because they either concern consumer transactions, or fail to explain what is meant by the word "dealt" under § 3–305(2). Because the provisions of § 3–305 are intended to facilitate commercial transactions and to encourage companies such as AITF to provide financing, *see* White and Summers, *Uniform Commercial Code* § 14–1 (3d Ed. 1988), it would be anomalous to find that AITF "dealt" with defendants within the meaning of § 3–305(2) by simply participating in the financial aspects of the transaction between Delta and Laminaciones. The result would be a loss of holder-in-due-course status and thus a discouragement of the sort of transaction the statute is supposed to promote. As Judge Wisdom noted in *Leasing Service Corp. v. River City Construction, Inc.,* 743 F.2d 871, 876 (11th Cir.1984), where parties to a contract sign a lease prepared by an independent finance company and immediately assign the lease to that finance company, such an arrangement "appears to be the very type of transaction that the Uniform Commercial Code sought to protect."

In addition, the Second Circuit has acknowledged that it is common for a financing company such as AITF (a "forfaiter") to "become involved in a transaction shortly after the commercial terms are worked out." *A.I. Trade Finance, Inc. v. Petra Bank,* 989 F.2d 76, 78 (2d Cir.1993). Because that is the commercial norm, a court should be and this court is loath to adopt a rule that would subject all forfaiters to defenses arising from sales contracts to which they are not a party, thereby requiring an entire class of financial companies to change the manner in which they conduct their business.

### B. *Holder in Due Course Status*

A holder in due course is a holder who takes a negotiable instrument a) for value, b) in good faith, and c) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person. *See* U.C.C. § 3–302. Defendants argue that plaintiff is not a holder in

due course of the promissory notes because the notes are not negotiable instruments, because AITF has not established that it took the notes in "good faith" and without notice of defendants' defenses, and because AITF was too involved in the transaction to be a holder in due course. (Def. Mem. at 25–33) These arguments are meritless.

### 1. *Negotiable Instrument*

■ Defendants contend that the promissory notes in question are not negotiable instruments because their issuance was conditioned upon delivery of the slitting line equipment, and that condition was never fulfilled. (Def.Mem. at 26) Ordinarily, whether an instrument is negotiable must be determined from the face of the instrument itself. *See Alicanto S.A. v. Woolverton,* 142 A.D.2d 703, 703, 531 N.Y.S.2d 296, 297 (2d Dep't 1988), *app. denied,* 73 N.Y.2d 702, 537 N.Y.S.2d 490, 534 N.E.2d 328 (1988). The notes in question are negotiable on their face: They are signed, contain an unconditional promise to pay a sum certain, are payable at definite times, and are payable to the order of Delta. *See* Pl.Ex. 12; U.C.C. § 3–104.

■ Although plaintiff had notice of the condition precedent, AITF's knowledge is not an issue in determining the negotiability of the notes because defendants signed a statement deeming the instruments in question "negotiable." (Pl.Ex. 6) Similar facts were considered in *Eaton v. Laurel Delicatessen Corp.,* 5 A.D.2d 590, 591, 173 N.Y.S.2d 868, 869 (1st Dep't 1958), *aff'd,* 5 N.Y.2d 1029, 185 N.Y.S.2d 551, 158 N.E.2d 251 (1959). In that case, plaintiff had purchased notes with knowledge that the notes were subject to a condition precedent. The defendant claimed that this knowledge precluded plaintiff from being a holder in due course. However, like Laminaciones and Altos Hornos, that defendant represented to the holder that the notes would be payable, stating that "the notes are a true obligation without any offset or counterclaim." The court found:

> The general rule in New York is that where a person, liable on a negotiable instrument, although having a good defense, makes representations to a prospective purchaser that the obligation is valid and binding and that there is no defense to it or that he will pay, he is estopped to resist payment by setting up a defense thereto as against such person who has taken the paper in reliance on his representation.

*Eaton,* 5 A.D.2d at 592, 173 N.Y.S.2d at 869.

Here, defendants signed a confirmation stating that "nothing in the commercial contract impairs the negotiability of the financial obligation." (Pl.Ex. 6) They cannot now contradict their own written acknowledgment. They have waived the defense that the instruments are not negotiable. *See Joint Venture Asset Acquisition v. Bhogaonker,* 769 F.Supp. 532, 536 (S.D.N.Y.1991) ("In New York, a waiver will overcome a defense to enforcement of a promissory note provided that the waiver explicitly addresses the defense in question and that it was knowingly entered into by the promisor [sic].")

### 2. *Good Faith*

■ Defendants contend that "the failure of any AITF witness to testify with respect to plaintiff's alleged 'good faith' and lack of notice of any defense when it took the notes at issue defeats AITF's claim of being a [holder in due course]." (Def. Mem. at 27) According to defendants, AITF failed to meet its burden of proof because no evidence was offered to support a finding of good faith. (Def.Mem. at 27–28)

■ Under New York law, the obligation of a holder to show good faith and lack of knowledge of defenses is "slight." *See First Intern'l Bank Ltd. v. L. Blankstein & Son, Inc.,* 59 N.Y.2d 436, 465 N.Y.S.2d 888, 891–92, 452 N.E.2d 1216 (1983) ("Since the requirement that a holder show that it did not have knowledge of a defense or claim to the instrument involves proof of a negative fact, we have held that its burden of proof is a slight one."). The burden is upon the defendants to rebut AITF's allegation of good faith. *See Fidelity Bank National Ass'n v. Avrutick,* 740 F.Supp. 222, 236 (S.D.N.Y.1990) ("A party challenging the good faith and lack of notice of a holder bears a substantial burden."). By this standard, AITF has adequately alleged holder in due course status.

Defendants have failed to raise a factual issue regarding good faith or knowledge of defenses. They have not offered any evidence to show that plaintiff did not receive the notes in good faith. The only knowledge that plaintiff has been shown to have had of a condition that might impair the obligation to pay the notes is knowledge that delivery of the equipment was required. However, a bill of lading was tendered to defendants' bank which apparently proved that the condition had been fulfilled. "When opposing a properly supported motion for summary judgment, a party must go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, or admissions that a genuine factual dispute exists." *National Union Fire Ins. Co. v. Carlie*, 1991 WL 221103, *3, 1991 U.S.Dist.LEXIS 14767, *8 (S.D.N.Y. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)), *aff'd* 972 F.2d 1328 (2d Cir.1992). Because defendants have not provided any reason for the court to doubt AITF's good faith, and because plaintiff's burden of proof on the issue of good faith is "slight," defendants have not shown that a genuine factual dispute exists.

### 3. Effect of "Close Connections" on Holder in Due Course Status

■■■ Under the "close-connections" doctrine,

a transferee does not take an instrument in good faith and is therefore not a holder in due course when there are sufficient facts to indicate [that] the transferee, by virtue of its unusually close relationship with the transferor, had reason to know or should have known of infirmities in the underlying transactions from which the instrument originated.

*Vitols v. Citizens Banking Co.*, 10 F.3d 1227, 1233 (6th Cir.1993); *see also Stotler v. Geibank Industrial Bank*, 827 P.2d 608, 611 (Colo.Ct.App.1992) (underlying theoretical basis for close connections doctrine is that the assignee is in such a close relationship with the assignor that it is either involved with many aspects of assignor's business, or has responsibility in this regard). Defen-

dants have failed to offer any evidence of a close connection between AITF and Delta.

Although there is little or no precedent regarding the close connections doctrine under New York law, the Eleventh Circuit has found that this doctrine applies only when the finance company 1) was formed and exists exclusively to finance the transactions of a particular seller, 2) is under the control of the seller, 3) affirmed promises made by the seller, or 4) was involved in a consumer credit transaction. *See Schneberger v. Wheeler*, 859 F.2d 1477, 1482 (11th Cir.1988); *Leasing Service Corp. v. River City Constr., Inc.*, 743 F.2d 871, 875 (11th Cir.1984). It is undisputed that AITF is an independent company and was involved in financing only two transactions for Delta. (Def.Mem. at 29; Pl.Rep. at 16). This level of contact is insufficient to prove a "close connection."

■■■ Defendants assert that AITF's involvement in the financial aspects of their transaction with Delta provides a basis for finding a "close connection." (Def.Mem. at 30) Some jurisdictions have found that participation in financing may present a triable issue of fact regarding close connections. *See e.g. King v. Central Bank*, 18 Cal.3d 840, 844–45, 135 Cal.Rptr. 771, 773, 558 P.2d 857, 859 (1977); *but see Block v. Ford Motor Credit Co.*, 286 A.2d 228, 233 (D.C.1972) (furnishing financing forms and purchasing notes alone are not enough to give a clear indication of close associations, even where finance company and seller are subsidiaries of the same parent company). However, even assuming that the financing relationship did show a close relationship between Delta and AITF, defendants have "adduce[d] no evidence whatsoever that this close working relationship gave rise to a sharing of knowledge about the transaction that would endanger [AITF's] holder in due course status." *Fidelity Bank National Ass'n v. Avrutick*, 740 F.Supp. 222, 236–37 (S.D.N.Y.1990). Although a close connection may facilitate the holder's actual discovery and notice of fraud, the close relationship alone cannot create an issue of the holder's notice. *Id.* at 237; *Equico Lessors, Inc. v. Ramadan*, 493 So.2d 516 (Fla.Dist.Ct.App.1986) ("In a commercial setting, more than just a close connection

must be shown before an assignee will be denied the status of a holder in due course.").

Because defendants have presented no evidence of a close connection between AITF and Delta, and because they have no proof that AITF had notice of their defenses because AITF participated in financing the transaction, AITF is a holder in due course of the promissory notes it purchased from Delta.

\* \* \*

For the reasons discussed above, AITF is a holder in due course of the notes in question and did not "deal" with defendants under U.C.C. § 3–305(2). Thus, plaintiff is entitled to payment on the notes, and plaintiff's motion for summary judgment is granted.

SO ORDERED.