CLARK COUNTY SCHOOL DISTRICT, APPELLANT, *v.* RICHARDSON CONSTRUCTION, INC., A NEVADA CORPORATION, RESPONDENT.

No. 40976

October 4, 2007                    168 P.3d 87

*Lewis & Roca, LLP*, and *Daniel F. Polsenberg* and *Heidi J. Parry Stern*, Las Vegas; *Kolesar & Leatham, Chtd.*, and *Alan J. Lefebvre*, Las Vegas, for Appellant.

*Lemons Grundy & Eisenberg* and *Robert L. Eisenberg*, Reno; *Parker Nelson & Arin, Chtd.*, and *Theodore Parker III*, Las Vegas, for Respondent.

Before MAUPIN, C. J., GIBBONS and HARDESTY, JJ.

## OPINION

By the Court, HARDESTY, J.:

In this appeal, we consider whether appellant Clark County School District (CCSD) waived its right to assert the statutory damages limitation under NRS 41.035, which limits tort damages against a political subdivision to $50,000, when it did not mention the statutory cap as an affirmative defense in its answer to respondent Richardson Construction, Inc.'s district court complaint.

We conclude that CCSD cannot waive its statutory damages protection, even though CCSD did not raise the statutory cap issue in its answer. Therefore, under NRS 41.035, any tort damages awarded in this case against CCSD must be limited to $50,000.

We also take this opportunity to consider the non-delineated defenses included in NRCP 8(c)'s "catchall" provision for pleading affirmative defenses in an answer. Further, we consider whether the district court properly sanctioned CCSD during trial for discovery abuses by striking the affirmative defenses that CCSD had asserted in its answer. While the district court did not abuse its discretion in sanctioning CCSD by striking its affirmative defenses, the district court overbroadly applied the sanction to exclude evidence relating to Richardson's prima facie case that were not required to be affirmatively pleaded, which effectively resulted in the striking of CCSD's entire answer. Under NRCP 8(c), as we interpret the "catchall" provision in that rule, non-delineated defenses must be affirmatively pleaded only if they raise new facts and arguments that would defeat the plaintiff's claims even if all allegations in the complaint were true. Since, under this interpretation of NRCP 8(c)'s "catchall" provision, several of CCSD's pleaded affirmative defenses responded to Richardson's prima facie case and were not true affirmative defenses, the district court erroneously precluded the jury from considering evidence offered to support those arguments. Accordingly, we reverse the district court's judgment and remand this matter for a new trial.

### FACTS

CCSD hired Richardson, a general contractor, to construct improvements to the school district's food service facilities. After construction was completed, a subcontractor filed a complaint against Richardson for unpaid amounts due on its completed work. Richardson, in turn, brought a third-party complaint against CCSD

for, among other things, indemnity, contribution, and wrongful interference with a prospective business advantage. CCSD filed an answer to Richardson's complaint, setting forth several assertions as affirmative defenses.

Thereafter, the parties conducted discovery and prepared for trial. Richardson's expert prepared a report on delay damages allegedly caused by CCSD. The expert, however, was late in producing the report. Consequently, before trial, CCSD filed a motion in limine to exclude Richardson's expert witness testimony, arguing that CCSD did not have sufficient time to prepare a defense against the delay damage claim and offering an affidavit by Dan McPartlin, a CCSD employee, in support of the motion.

At the hearing on CCSD's motion, Richardson argued that its expert's report was late because CCSD had not produced documents that were needed to complete the report. Among those missing documents, it asserted, was a file from McPartlin. Although McPartlin averred that he might have certain documents that CCSD had not previously produced, Richardson was unable to name the specific documents that it sought from CCSD. Therefore, the district court continued the hearing to a later date so that the parties could submit information on the specific documents.

When the hearing resumed, CCSD provided the district court with an affidavit from McPartlin. The affidavit stated, ''To the best of [McPartlin's] knowledge, no other material exists regarding this matter which has not already been provided.'' Based on this affidavit, the district court found that CCSD was not responsible for delaying Richardson's expert's report. Therefore, the district court granted CCSD's motion to exclude the expert's testimony on delay damages.

During McPartlin's testimony at trial, however, he disclosed that he possessed a file that he had not produced to the parties' attorneys. McPartlin informed the court that he believed that the file contained nothing that had not already been produced during discovery. The court, however, ordered McPartlin to produce his file. The following day, McPartlin produced the file, which contained nearly 1,700 documents. After the parties had time to review the documents, the court held a hearing on whether and how to sanction CCSD for not producing the documents earlier.[1]

At the sanctions hearing, McPartlin testified that a CCSD attorney, Richard Prato, had prepared McPartlin's affidavit stating that McPartlin had reviewed all of his files and that all of his files had been turned over to CCSD. According to McPartlin, he told Prato that he would not sign the affidavit because he had located another file but had not yet reviewed it. Prato then told McPartlin that any-

---

[1]The district court gave Richardson the opportunity to request a mistrial, but Richardson chose to continue with the trial. Instead, Richardson sought sanctions against CCSD.

thing that could be in the file would already have been produced during discovery. McPartlin then testified that Prato told him not to look in the file. McPartlin and Prato agreed to the language ultimately used in McPartlin's affidavit, but McPartlin also stated that he felt pressured to sign the affidavit.

Prato, however, recalled his discussion with McPartlin differently. Prato agreed that he had telephoned McPartlin to sign the first draft of the affidavit. According to Prato, however, he understood McPartlin to have said that he had not found any files but was still looking, rather than, as McPartlin testified, that he had found a file but had not yet reviewed it. Prato also testified that he never instructed McPartlin not to look at any files.

Following the hearing, the district court made findings and issued sanctions against CCSD. The court found that of the 1,700 documents McPartlin produced, 500 to 700 of them had not been previously produced by CCSD. Thus, the court determined that, in addition to CCSD producing documents late, McPartlin's affidavit was false. For sanctions, among other things, the district court struck all of CCSD's affirmative defenses.[2] In so doing, the district court stated, "I'm going to strike all of their affirmative defenses. They will not be able to raise any facts or issues relative to their affirmative defenses."

During the remainder of the trial, the district court prevented CCSD from presenting evidence on any of the affirmative defenses that it had pleaded in its answer. In doing so, however, the district court did not analyze whether the evidence that CCSD sought to introduce was offered in support of a defense that NRCP 8(c) required be affirmatively pleaded, or was merely offered to rebut Richardson's prima facie case.

Also, to prevent the jury from considering earlier admitted evidence related to CCSD's stated affirmative defenses, the district court approved three limiting jury instructions: Jury Instructions 19, 20, and 21. Jury Instruction 19 instructed the jury to "disregard any evidence it has seen or heard from [CCSD], or any witness at trial, alleging that Richardson was the cause of any delay on this project." Jury Instruction 20 instructed the jury to "disregard any evidence it has seen or heard from [CCSD], or any witness at trial, alleging that Richardson failed to perform all of its obligations under the contract." Jury Instruction 21 instructed the jury to "disregard any evidence it has seen or heard from [CCSD], or any witness at trial, regarding any damages claimed to have been incurred by [CCSD]."

---

[2]The district court also sanctioned CCSD by allowing Richardson's expert to testify about delay damages and awarding Richardson the attorney fees and costs that it had incurred in reviewing the untimely documents. The district court also transmitted a copy of the sanctions hearing transcript to the State Bar.

The jury returned a verdict in Richardson's favor, awarding Richardson, among other damages, $225,000 for CCSD's wrongful interference with a prospective business advantage and $500,000 on its claims for contribution and indemnification. CCSD moved for a new trial but soon thereafter requested that the district court summarily deny the motion, which the court did.

CCSD then appealed from the judgment and from the order denying its new trial motion. Because CCSD had requested that its new trial motion be denied and therefore was not aggrieved by the court's decision to do so, we previously dismissed its appeal as to that order for lack of jurisdiction.[3] We further concluded, however, that CCSD could proceed with its appeal from the district court's judgment entered upon the jury verdict.

## DISCUSSION

On appeal, CCSD argues that damages for any wrongful interference with Richardson's prospective business advantage, a tort, are limited to $50,000 total because it is a political subdivision entitled to a statutory limitation on tort damages under NRS 41.035(1). Next, CCSD argues that the district court erred in the application of its sanction order. According to CCSD, the court did not merely preclude evidence related to CCSD's affirmative defenses, but rather, all evidence needed to defend against Richardson's prima facie case. CCSD contends that the district court's actions in this respect effectively struck CCSD's entire answer, which CCSD asserts was an improper sanction under the circumstances.[4]

In addition to responding to CCSD's arguments on appeal, Richardson contends that CCSD's appeal should be dismissed in its entirety under the invited error doctrine, which precludes a party from raising on appeal errors that the party induced or provoked the court or the opposite party to commit.[5] Specifically, Richard-

---

[3]*See* NRAP 3A(a) (explaining that only aggrieved parties may appeal).

[4]CCSD also argues that the jury's verdict on Richardson's contribution and indemnification claims was improper because it awarded Richardson more than the subcontractor recovered from Richardson. Richardson pleaded separate claims in this regard, one for contribution and one for equitable indemnity. The district court instructed the jury only on contribution. The jury's verdict, however, stated that the award was for "contribution and indemnification." We conclude that the instruction on, and the award for, contribution was improper in this case because the subcontractor's claims against Richarson were solely based on contract, and contribution is a method of apportioning damages among joint tortfeasors. *See* NRS 17.225; *Bd. of Educ. v. Sargent, Webster, et al.*, 517 N.E.2d 1360, 1362-65 (N.Y. 1987); *Intamin, Inc. v. Figley-Wright Contractors, Inc.*, 605 F. Supp. 707, 709-10 (N.D. Ill. 1985). Whether an instruction on equitable indemnity is appropriate on retrial will have to be determined by the district court.

[5]*Pearson v. Pearson*, 110 Nev. 293, 297, 871 P.2d 343, 345 (1994).

son contends that CCSD's arguments on appeal are identical to the arguments that it made in its motion for a new trial. Because CCSD requested that the district court summarily deny its motion for a new trial, Richardson contends that CCSD cannot now raise those arguments on appeal.

*Invited error doctrine*

We disagree with Richardson's invited error argument. By requesting the district court to deny its motion for new trial, CCSD did not waive its right to raise those issues on appeal from the judgment, since those issues were adequately preserved below. On its appeal from the final judgment, CCSD assigns error to acts that took place before it asked the district court to summarily resolve its new trial motion. Thus, CCSD did not induce or provoke the asserted errors. Accordingly, CCSD may proceed with its challenges to the district court's statutory damages limitation determination and sanctions.

*Statutory damages limitation under NRS 41.035*

CCSD asserts that the district court erred in upholding the jury's verdict of $225,000 on Richardson's tortious interference with a prospective business advantage claim, notwithstanding the $50,000 statutory limitation on tort damages awarded against political subdivisions. Richardson argues that CCSD waived any defense based on the statutory damages cap by failing to assert the defense below.[6]

As a preliminary matter, we conclude that, although CCSD did not assert the statutory damages cap below, the limitation cannot be waived. Under the doctrine of sovereign immunity, generally, Nevada and its political subdivisions enjoy blanket immunity from tort liability.[7] The Legislature, however, has waived this immunity on a limited basis.[8] One such limitation allows a party to recover up to $50,000 against Nevada or a political subdivision in tort damages in certain situations.[9] Because the statutory cap functions

---

[6]Under NRS 41.035, political subdivisions like CCSD, which operate on public funds, are protected by a $50,000 limitation on tort damages. *See* NRS 41.0305 (including ''school district'' in the definition of ''political subdivision'').

[7]*See County of Clark v. Upchurch*, 114 Nev. 749, 756, 961 P.2d 754, 759 (1998).

[8]NRS 41.031(1).

[9]NRS 41.035(1).

automatically as a damage limitation up to $50,000 in tort recovery against the State and its political subdivisions, CCSD had no duty to assert the damage limitation as an affirmative defense.

Nevertheless, Richardson maintains that the $225,000 jury verdict was appropriate because CCSD engaged in five separate instances of tortious interference. We disagree. We have previously concluded that the $50,000 cap applies on a per-person, per-claim basis.[10] Although Richardson asserts that there were five separate "claims" of tortious interference, Richardson's third-party complaint states only one cause of action for tortious interference against CCSD. The authorities supporting the per-person, per-claim rule for applying the cap clearly indicate that "claim" means "cause of action,"[11] not each instance of the wrong as Richardson contends. This conclusion is further supported by our decision in *County of Clark v. Upchurch*, discussing, but specifically not adopting, a "per incident or occurrence" standard for damages under NRS 41.035.[12]

We therefore conclude that the jury's verdict of $225,000 for tortious interference with a prospective business advantage must be capped in the district court's judgment on that award. Accordingly, if the jury finds for Richardson on its tortious interference claim, upon retrial, the district court may not award more than $50,000 to Richardson.

### Sanction striking CCSD's stated affirmative defenses

Because of CCSD's failure to produce documents in a timely manner and its production of an affidavit falsely indicating that all relevant documents had been produced, the district court sanctioned CCSD by striking its affirmative defenses. CCSD contends, however, that even if striking its affirmative defenses was appropriate under the circumstances, the district court, in practice, entirely prevented CCSD from defending against Richardson's

---

[10]*Upchurch*, 114 Nev. at 759, 961 P.2d at 761.

[11]*See id.* at 757-59, 961 P.2d at 759-61 (citing *State v. Webster*, 88 Nev. 690, 691, 504 P.2d 1316, 1319 (1972) (allowing separate recovery against the State for wife's causes of action for her own injuries and for the wrongful death of her husband); *State v. Eaton*, 101 Nev. 705, 708, 710 P.2d 1370, 1373 (1985) (allowing for potential separate damage awards against the State for the mother's personal injury, wrongful death of her baby, and for the mother's claim for emotional distress); *Arnesano v. State, Dep't Transp.*, 113 Nev. 815, 818, 824, 942 P.2d 139, 141, 145 (1997) (affirming the district court's award of damages of $50,000 each for decedent's wife and two children)).

[12]*Id.* at 757, 961 P.2d at 759.

claims. Therefore, CCSD argues, in applying the sanction, the district court effectively struck CCSD's entire answer and entered a default judgment against CCSD, a sanction that was not warranted under the circumstances.

We conclude that the district court's sanction of striking CCSD's affirmative defenses was appropriate. Nevertheless, we agree with CCSD that the district court's application of its sanction order effectively defaulted CCSD, because not all of CCSD's stated affirmative defenses were, in fact, affirmative defenses. We therefore conclude that the district court abused its discretion in applying its sanction order.

### Propriety of sanction striking CCSD's affirmative defenses

Under NRCP 37(b)(2), a district court has discretion to sanction a party for its failure to comply with a discovery order, which includes document production under NRCP 16.1. We will set aside a sanction order only upon an abuse of that discretion.[13] In general, a district court may impose sanctions only when there has been willful noncompliance with the discovery order or willful failure to produce documents as required under NRCP 16.1.[14]

Here, we conclude that substantial evidence supports the district court's decision to sanction CCSD by striking CCSD's affirmative defenses. McPartlin signed an affidavit representing to the district court that all pertinent files had been produced. But during his trial testimony, he indicated that at least one file still existed that had not been produced as required, and the next day, McPartlin turned over approximately 1,700 documents to the district court, 500 to 700 of which had not been previously produced, even though they were subject to NRCP 16.1 production provisions and were relevant to the litigation. This dispute resulted in nearly a one-week delay in the trial.

We therefore conclude that the district court did not abuse its discretion in striking CCSD's affirmative defenses. And it is clear from the district court's statements during the hearing in which it issued sanctions against CCSD and during the remainder of the trial that it only intended to strike CCSD's affirmative defenses, not CCSD's entire answer. In issuing the relevant sanction, the district court stated, "I'm going to strike all of their affirmative de-

---

[13]*GNLV Corp. v. Service Control Corp.*, 111 Nev. 866, 869, 900 P.2d 323, 325 (1995).

[14]*Id.* (citing *Fire Ins. Exchange v. Zenith Radio Corp.*, 103 Nev. 648, 651, 747 P.2d 911, 913 (1987)).

fenses. They will not be able to raise any facts or issues relative to their affirmative defenses." In applying the sanction, however, the district court struck more than CCSD's affirmative defenses, which we conclude was an abuse of discretion.

### In application, the district court effectively struck CCSD's entire answer

Not all of CCSD's stated affirmative defenses were true NRCP 8(c) affirmative defenses. Some were merely defenses to Richardson's prima facie case. In applying its sanction order, however, the district court precluded the introduction of evidence related to all of CCSD's stated affirmative defenses, whether or not they were true affirmative defenses. Because the district court's application of its sanction prevented CCSD from defending against Richardson's prima facie case, we conclude that, in application, the sanction was akin to a dismissal with prejudice.[15]

The district court intended to strike CCSD's affirmative defenses, not to strike its answer altogether. Nevertheless, when repeatedly asked by CCSD's counsel whether the court was preventing CCSD from defending against Richardson's prima facie case, the court precluded evidence if it was related to a stated affirmative defense. The district court never analyzed, however, whether the stated affirmative defense was, in fact, actually an affirmative defense. Because many of CCSD's stated affirmative defenses were not true NRCP 8(c) affirmative defenses, the court in reality applied a far greater sanction (striking CCSD's answer).

### Not all of CCSD's stated affirmative defenses are, in fact, affirmative defenses

NRCP 8(c) states which defenses a party must plead affirmatively. Specifically, a party must affirmatively plead "accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, [and] waiver."[16] The rule also provides a "catchall"

---

[15]See *Baker v. General Motors Corp.*, 86 F.3d 811, 817 (8th Cir. 1996) (holding that trial court's sanctions of striking defendant's affirmative defense and affirmatively establishing certain matters in plaintiff's favor deprived defendant of its opportunity to be heard), *rev'd on other grounds*, 522 U.S. 222 (1998); *U.S. for Use of Wiltec Guam v. Kahaluu Constr.*, 857 F.2d 600, 601-03 (9th Cir. 1988) (holding that a sanction declaring plaintiff's allegations as established against defendant was akin to dismissal and default judgment against defendant).

[16]NRCP 8(c).

that "any other matter constituting an avoidance or affirmative defense" must be set forth affirmatively.[17]

■■■■ ■

Determining what defenses fall under the "catchall" provision is an issue of first impression for this court. To give courts and litigants guidance on this issue, we adopt the following test used by federal courts: allegations must be pleaded as affirmative defenses if they raise " 'new facts and arguments that, if true, will defeat the plaintiff's . . . claim, even if all allegations in the complaint are true.' "[18]

In applying its sanction order, the district court prevented CCSD from introducing evidence related to any of its stated affirmative defenses, whether or not they were truly affirmative defenses. The district court also gave several jury instructions to prevent the jury from considering any evidence produced before the sanction was imposed that related to CCSD's stated affirmative defenses. We conclude that, because some of CCSD's stated affirmative defenses were merely defenses to Richardson's prima facie case rather than NRCP 8(c) affirmative defenses, the district court, in applying its sanction order, effectively struck CCSD's answer.

In its answer to Richardson's third-party complaint, CCSD stated the following eight affirmative defenses, in relevant part:

> First Affirmative Defense: Richardson's allegations against CCSD failed to state a cause of action upon which relief can be granted.
> Second Affirmative Defense: Richardson's damages were caused by the conduct of parties not acting on behalf of CCSD and parties over which CCSD had no control.
> Third Affirmative Defense: Richardson's damages are speculative, not supported by proof, and not compensable as a matter of law.
> Fourth Affirmative Defense: Richardson failed to mitigate its damages.
> Fifth Affirmative Defense: Richardson's claimed damages are barred because of Richardson's failure to fulfill conditions precedent to receiving additional payment under the contract.
> Sixth Affirmative Defense: CCSD performed its obligations under the contract.
> Seventh Affirmative Defense: Richardson is not entitled to recover under the contract because it violated the covenant of good faith and fair dealing.

[17]*Id.*

[18]*Saks v. Franklin Covey Co.*, 316 F.3d 337, 350 (2d Cir. 2003) (quoting *Black's Law Dictionary* 430 (7th ed. 1999)); *see also Wolf v. Reliance Standard Life Ins. Co.*, 71 F.3d 444, 449 (1st Cir. 1995).

Eighth Affirmative Defense: By virtue of the terms of the contract, Richardson waives all claims against CCSD.[19]

As explained below, of those affirmative defenses, the following raise new facts and arguments that, if proven, would defeat Richardson's claim and thus are true affirmative defenses: the fourth (mitigation of damages),[20] the fifth (failure of Richardson to fulfill conditions precedent),[21] the seventh (breach of covenant of good faith and fair dealing),[22] and the eighth (waiver).[23] Because these are all NRCP 8(c) affirmative defenses, the district court properly precluded CCSD from presenting evidence related to each. The remaining stated affirmative defenses, however, need not

---

[19]CCSD stated a ninth affirmative defense that merely asserted that CCSD reserved its "right" to raise additional affirmative defenses.

[20]In interpreting FRCP 8(c), which is identical to NRCP 8(c), federal courts agree that failure to mitigate damages is an affirmative defense. *See Conjugal Partnership v. Conjugal Partnership*, 22 F.3d 391, 400 (1st Cir. 1994) ("Failure to mitigate is an affirmative defense as a matter of federal procedural law . . . ."); *Lennon v. U.S. Theatre Corp.*, 920 F.2d 996, 1000 (D.C. Cir. 1990) ("[F]ailure to mitigate [damages] is an affirmative defense under Rule 8(c) . . . ."); *N.L.R.B. v. Pilot Freight Carriers, Inc.*, 604 F.2d 375, 377 (5th Cir. 1979) (stating that a failure to mitigate damages is an affirmative defense); *Camalier & Buckley-Madison Inc. v. Madison H., Inc.*, 513 F.2d 407, 420 n.92 (D.C. Cir. 1975) ("[M]itigation of damages is 'other matter constituting an avoidance or affirmative defense,' and as such is to be affirmatively pleaded." (quoting FRCP 8(c))).

[21]Generally, the plaintiff has the burden to plead and prove that it fulfilled conditions precedent in order to recover on a breach of contract claim. *See* NRCP 9(c); *see also Walton v. NALCO Chemical Co.*, 272 F.3d 13, 20-23 (1st Cir. 2001). If the plaintiff so avers generally, as Richardson did in its third-party complaint, then the defendant (CCSD) must specifically allege in an affirmative defense that the plaintiff failed to fulfill the necessary conditions. *See* NRCP 9(c); *Endovasc, Ltd. v. J.P. Turner & Co., LLC*, 169 Fed. App'x 655 (2d Cir. 2006) (unpublished decision) (interpreting New York law in accordance with the Federal Rules of Civil Procedure for pleading, which are the same as Nevada's rules). Additionally, CCSD sought to use Richardson's alleged failure to fulfill conditions precedent to show that CCSD was entitled to liquidated damages, which would offset Richardson's claimed damages. A defense of offset must also be pleaded affirmatively. *See Hassan v. U.S. Postal Service*, 842 F.2d 260, 263 (11th Cir. 1988) (interpreting FRCP 8(c), which is the same as NRCP 8(c)); *Chicago Great Western Ry. Co. v. Peeler*, 140 F.2d 865, 868 (8th Cir. 1944) (interpreting FRCP 8(c), which is the same as NRCP 8(c)); 5 Charles Wright & Arthur Miller, *Federal Practice and Procedure* § 1271, at n.46 (3d ed. 2005).

[22]*Bunge Corporation v. Recker*, 519 F.2d 449, 451-52 (8th Cir. 1975) (determining that lack of good faith must be pleaded affirmatively under FRCP 8(c) and that bad faith falls as a subset of fraud which is specifically enumerated under the rule to be pleaded affirmatively); *see* NRCP 8(c) (delineating fraud as a defense that must be affirmatively pleaded).

[23]NRCP 8(c).

have been pleaded affirmatively. Therefore, the district court erred by precluding evidence related to them.

### First stated affirmative defense (failure to state a claim)

CCSD's first stated affirmative defense is that Richardson's allegations failed to state a cause of action upon which relief can be granted.

NRCP 12(h)(2) permits raising the NRCP 12(b)(5) defense of failure to state a claim upon which relief can be granted at the pleading stage, by a motion for judgment on the pleadings, or at trial on the merits.[24] Under NRCP 8(c), a defense that is not set forth affirmatively in a pleading is waived.[25] Comparing the requirements for asserting a failure to state a claim defense under NRCP 12(b)(5) with the requirements for pleading an affirmative defense under NRCP 8(c), we conclude that a defense under NRCP 12(b)(5) need not be pleaded affirmatively because it may be asserted at any time.

### Second stated affirmative defense (Richardson's damages were caused by others)

CCSD's second stated affirmative defense is that Richardson's damages were caused by the conduct of parties not acting on behalf of CCSD, over which CCSD had no control. The thrust of this stated affirmative defense is that Richardson's damages were not "caused" by CCSD. In tort actions, a defendant's allegations that a party other than the defendant caused the plaintiff's damages need not be set forth affirmatively because such allegations negate an essential element of the plaintiff's claim—proximate cause.[26]

---

[24]See Roskam Baking Co. v. Lanham Machinery Co., 105 F. Supp. 2d 751, 753 (W.D. Mich. 2000) (stating that, under FRCP 12(h)(2) (the same as NRCP 12(h)(2)), failure to state a claim upon which relief can be granted need not be asserted in an answer as an affirmative defense), aff'd, 288 F.3d 895 (6th Cir. 2002).

[25]See Marschall v. City of Carson, 86 Nev. 107, 111, 464 P.2d 494, 497 (1970) (stating that, in general, affirmative defense of justification not pleaded affirmatively was waived); Coray v. Hom, 80 Nev. 39, 40, 389 P.2d 76, 77 (1964) (concluding that affirmative defense of statute of frauds not pleaded affirmatively was waived); Chisholm v. Redfield, 75 Nev. 502, 508, 347 P.2d 523, 526 (1959) (concluding that failure to plead affirmative defense of statute of frauds constituted waiver of the defense).

[26]See Banks v. Sunrise Hospital, 120 Nev. 822, 843-45, 102 P.3d 52, 67-68 (2004); Geurin v. Winston Industries, Inc., 316 F.3d 879, 884-85 (9th Cir. 2002). This situation can be distinguished from an allegation of contributory negligence, which must be pleaded affirmatively under NRCP 8(c). In a de-

Similar to tort claims, causation is an essential element of a claim for breach of contract.[27] That is, "[i]f the damage of which the promisee complains would not have been avoided by the promisor's not breaking his promise, the breach cannot give rise to damages."[28]

Here, Richardson asserted both tort and contract claims. For each claim, Richardson alleged that CCSD was the cause of Richardson's damages. CCSD denied each allegation that CCSD caused Richardson's damages. Because CCSD's stated affirmative defense merely sought to negate an essential element of Richardson's claims—causation—CCSD need not have pleaded such allegations affirmatively. The district court, therefore, improperly precluded CCSD from presenting evidence related to this stated affirmative defense.

After the district court struck CCSD's affirmative defenses, and during the testimony of Rusty Coleman, Richardson's employee and the project manager for the project, CCSD's counsel asked the district court if he could question Coleman on whether Richardson's subcontractors may have been the cause of Richardson's delays, which led to Richardson's damages. The district court specifically prohibited CCSD's counsel from questioning Coleman on that issue because it went to CCSD's second affirmative defense. Additionally, before the district court issued the sanction, CCSD's counsel elicited testimony from Coleman that Richardson's contract stated the number of days it would need to complete the project. Such evidence implied that Richardson was at fault for not completing the project on time because it had specified the number of days it would need to complete the project. Because this testimony came before the sanctions, it was permitted. However, the district court, in Jury Instruction 19, instructed the jury that it was to disregard any evidence that Richardson caused any delay on the project.

Because CCSD's defense that Richardson's delays were caused by someone else was not a true affirmative defense, we conclude that the district court abused its discretion in applying the sanction

fense of contributory negligence, the defendant is not saying that it was not the cause of the plaintiff's injuries. Rather, the defendant is saying that even though the plaintiff can prove its prima facie case of negligence, the plaintiff too had a duty that it breached, and the plaintiff was also the cause of its injuries. *See Black's Law Dictionary* 716-17 (6th ed. 1991) (defining contributory negligence).

[27]*Wisconsin Knife Works v. National Metal Crafters*, 781 F.2d 1280, 1289 (7th Cir. 1986) ("As in tort law, so in contract law, causation is an essential element of liability.").

[28]*Id.* ("If Wisconsin Knife Works couldn't have made any money from manufacturing spade bits no matter how promptly National Metal Crafters delivered the blanks for them, the failure to make prompt delivery caused no legal injury and cannot provide the foundation for a successful damage suit even if the late delivery was a breach of the contract.").

by precluding evidence related to this stated affirmative defense and in giving Jury Instruction 19.

### Third stated affirmative defense (Richardson's damages are speculative)

CCSD's third stated affirmative defense is that Richardson's damages were speculative, not supported by proof, and not compensable as a matter of law. The plaintiff has the burden to prove the amount of damages it is seeking.[29] Although the amount of damages need not be proven with mathematical certainty, testimony on the amount may not be speculative.[30] Courts placing this burden on the plaintiff generally maintain that an allegation that the plaintiff's damages are speculative or not supported by proof need not be pleaded as an affirmative defense[31] because the plaintiff's burden of proving damages necessarily puts at issue whether the damages are speculative.[32] Therefore, the district court improperly precluded evidence related to this stated affirmative defense.

CCSD introduced or attempted to introduce evidence that Richardson's damages were speculative both before and after the district court issued its sanctions. Before the sanctions and during testimony by the head of CCSD's architectural department, Richardson elicited testimony implying that it was CCSD's plans for the project that led to delays and ultimately to Richardson's damages. However, on cross-examination, the architectural department head testified that in order to determine for certain whether the delays were the result of CCSD's poor design, he would have to see the plans, which Richardson never offered into evidence. This testimony implies that Richardson's damages were speculative because they did not necessarily distinguish delays that were CCSD's fault and those that may have been Richardson's fault.

Also, when cross-examining Richardson's president, CCSD's counsel asked whether his profits were speculative. The district court prevented such evidence on the basis that it supported CCSD's third affirmative defense. CCSD then attempted to question the formula Richardson used to determine the amount the company was owed under the contract. Again, the district court prevented such questioning because it supported CCSD's third affirmative defense.

Finally, the district court prevented CCSD from questioning Richardson's damages expert about how he calculated delay dam-

---

[29]*Frantz v. Johnson*, 116 Nev. 455, 469-70, 999 P.2d 351, 360 (2000).

[30]*See id.*

[31]*See Clark v. Milam*, 152 F.R.D. 66, 73 (S.D. W. Va. 1993); *Gilbert v. Eli Lilly & Co. Inc.*, 56 F.R.D. 116, 125 (D. P.R. 1972); *Sharon Leasing v. Phil Terese Transp.*, 701 N.E.2d 1150, 1157-59 (Ill. Ct. App. 1998).

[32]*See Clark*, 152 F.R.D. at 73; *Gilbert*, 56 F.R.D. at 125; *Sharon Leasing*, 701 N.E.2d at 1157-59.

ages. The district court said that such questioning supported CCSD's third affirmative defense, which was stricken, and disallowed the testimony.

Because all of this evidence related to a defense to Richardson's prima facie case and not an NRCP 8(c) affirmative defense, the district court abused its discretion in precluding it.

*Sixth stated affirmative defense (CCSD performed under the contract)*

CCSD's sixth affirmative defense stated, "This answering Third Party Defendant completely performed its obligations pursuant to the contract at issue in Third Party Plaintiff's complaint." This stated affirmative defense merely asserts that CCSD did not breach the contract, an item put in issue by Richardson's claims. Therefore, CCSD need not have pleaded this allegation affirmatively. In its denials, CCSD also denied each of Richardson's allegations that CCSD failed to perform under the contract.

The record indicates that the district court appropriately permitted evidence that CCSD performed under the contract even though the act was stated as an affirmative defense. However, the district court never instructed the jury on the elements of breach of contract, although CCSD proffered such an instruction. The lack of instruction prevented the jury from considering whether CCSD, in fact, performed the contract and definitively established Richardson's prima facie case of breach of contract. Therefore, the district court abused its discretion with respect to disallowing evidence of CCSD's contract performance.

Based on the above, the district court's application of its sanction striking CCSD's stated affirmative defenses had the effect of striking CCSD's entire answer. As we have already concluded, such a sanction was inappropriate in this case.

## CONCLUSION

We conclude that CCSD cannot waive its statutory damages protection. Therefore, any tort damages awarded in this case against CCSD must be limited to $50,000, even though CCSD did not raise the immunity issue in its answer. While we affirm the district court's decision to impose sanctions in this case, we conclude that the district court applied its sanction order overbroadly. Accordingly, we reverse the judgment of the district court entered upon the jury verdict and remand for a new trial on the tort and contract claims consistent with this opinion.

MAUPIN, C. J., and GIBBONS, J., concur.