VINCENT T. SCHETTLER; AND VINCENT T. SCHETTLER, TRUSTEE OF VINCENT T. SCHETTLER LIVING TRUST, APPELLANTS, v. RALRON CAPITAL CORPORATION, A NEVADA CORPORATION, RESPONDENT.

No. 56508

May 3, 2012                                     275 P.3d 933

*Feldman Graf* and *Rusty Graf*, Las Vegas; *White & Case, LLP*, and *Roberto J. Kampfner*, Los Angeles, California, for Appellants.

*Robison, Belaustegui, Sharp & Low* and *Mark G. Simons*, Reno, for Respondent.

Before DOUGLAS, HARDESTY and PARRAGUIRRE, JJ.

## OPINION

By the Court, HARDESTY, J.:

In this appeal, we consider whether the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), 12 U.S.C. § 1821 (2006), an act that governs the disposition of failed financial institutions' assets, divests a court of jurisdiction to consider any defense or affirmative defense not first adjudicated through FIRREA's claims process. As part of our inquiry, we must determine an issue of first impression in Nevada regarding whether FIRREA's jurisdictional bar extends to successors in interest to the Federal Deposit Insurance Corporation (FDIC). We conclude that while FIRREA's jurisdictional bar divests a district court of jurisdiction to consider claims and counterclaims asserted against a successor in interest to the FDIC not first adjudicated through FIRREA's claims process, it does not apply to defenses or

affirmative defenses raised by a debtor in response to the successor in interest's complaint for collection.

### FACTS AND PROCEDURAL HISTORY

On September 15, 2006, appellant Vincent T. Schettler and Silver State Bank executed a Business Loan Agreement (the Loan) and a Promissory Note (the Note), under which Silver State provided Schettler with a $2,000,000 revolving line of credit. Schettler agreed to pay interest on the loan monthly until the loan's maturity date, at which time he would be required to pay all outstanding principal and any remaining unpaid accrued interest. The original maturity date of the Loan and the Note was September 15, 2007. On that date, Schettler and Silver State entered into a Change in Terms Agreement that modified the maturity date to September 15, 2008. That same day, Schettler also executed a Commercial Guaranty in his capacity as Trustee for the Vincent T. Schettler Living Trust, guaranteeing to pay all of the Loan obligations.[1] It is undisputed that the Loan, the Note, and the Commercial Guaranty (loan agreement) were valid and enforceable contracts at their inception.

According to Schettler, he and Silver State were in the process of again modifying the maturity date when, on August 14, 2008, Silver State notified Schettler by letter that it had frozen the remaining funds available on the line of credit because of a material change in Schettler's financial condition or, in Silver State's belief, his prospect of performance on the Note was impaired. Silver State also informed Schettler that it had decided "to cancel any current commitments" until Schettler cured the "[d]efaults," but that "[u]ntil that time, [Schettler was] responsible for payment of interest on the loan." At the time of the default notice, however, Schettler was current on his payments, and the loan had an outstanding principal balance of $1,114,000.

A few weeks later, on September 5, 2008, Silver State was placed into receivership, and the FDIC was appointed as receiver. That same day, the FDIC informed Schettler that it was the receiver for Silver State and that it expected Schettler to continue to abide by the terms and conditions of the Loan and the Note. The FDIC subsequently published notices in local Las Vegas newspapers that required all creditors having claims against Silver State to submit their claims to the FDIC by December 10, 2008, after which a creditor's claim would be barred. Schettler did not pay the

---

[1]Throughout this opinion, appellants Vincent T. Schettler individually and Vincent T. Schettler as Trustee of the Vincent T. Schettler Living Trust will be referred to collectively as Schettler.

outstanding principal and interest by the September 15 maturity date or file any administrative claims against Silver State with the FDIC by December 10.

In March 2009, respondent RalRon Capital Corporation acquired ownership of Schettler's loan agreement. The terms of RalRon's acquisition are not clear from the record. Shortly thereafter, RalRon notified Schettler that it owned the Loan and Note and "demand[ed] that payment of the full amount of principal, interest, and late fees . . . be made within 10 days." After nonpayment from Schettler, RalRon filed a complaint in the district court, asserting claims for breach of contract, contractual breach of the implied covenant of good faith and fair dealing, unjust enrichment, and breach of personal guaranty. Schettler filed an answer to RalRon's complaint, denying liability, and asserting several affirmative defenses and counterclaims against RalRon for breach of contract, breach of the implied covenant of good faith and fair dealing, and estoppel.

RalRon moved for summary judgment on its breach of contract and breach of personal guaranty claims[2] and on Schettler's counterclaims. RalRon argued that there was no genuine issue of material fact for trial, that Schettler's counterclaims and "alleged defenses" were barred because Schettler failed to file any administrative claims with the FDIC as required by FIRREA, and that RalRon was a holder in due course immune from Schettler's defenses. Schettler opposed the motion and disputed RalRon's FIRREA argument. He also argued that there existed questions of fact for trial, that the FDIC's failure to mail Schettler notice of the bar date should have "allow[ed] the administrative process to begin anew," and that Silver State anticipatorily breached the loan agreement before any default by Schettler. After a hearing, the district court granted summary judgment in favor of RalRon on its claims for breach of contract and breach of personal guaranty. In so doing, the district court barred Schettler's affirmative defenses and dismissed his counterclaims, reasoning that, because they were all essentially claims against the FDIC and Schettler had failed to follow the claims administration process, they were barred by FIRREA. The court further determined that Schettler received adequate notice of the bar date. Schettler filed a motion for reconsideration, which the district court denied. The district court subsequently entered judgment against Schettler for the outstanding principal and interest on the loan and for RalRon's attorney fees and costs. This appeal followed.

---

[2]RalRon did not pursue its claims for breach of the implied covenant of good faith and fair dealing or unjust enrichment. It later characterized them as "moot." Thus, we do not discuss them further in this opinion.

## DISCUSSION

We begin with an overview of FIRREA and examine whether a successor in interest to a failed financial institution is entitled to benefit from FIRREA's jurisdictional bar. We conclude that the bar applies to claims or counterclaims asserted by a debtor who failed to file an administrative claim with the FDIC. We next address whether FIRREA's jurisdictional bar precludes a court's consideration of the debtor's assertion of defenses and affirmative defenses in response to a complaint for collection. After concluding that the bar does not apply to affirmative defenses, we address whether Schettler's answer raised affirmative defenses or, as RalRon argues on appeal, "claims" that the district court correctly refused to consider. Because we conclude that Schettler raised affirmative defenses not barred by FIRREA, we reverse the district court's grant of summary judgment in favor of RalRon precluding Schettler's affirmative defenses.

Because our analysis involves questions of law pertaining to statutory construction and a district court's subject matter jurisdiction, de novo review applies. *See Hardy Companies, Inc. v. SNMARK, LLC*, 126 Nev. 528, 533, 245 P.3d 1149, 1153 (2010) (explaining that statutory construction issues are " 'question[s] of law that this court reviews de novo' " (quoting *A.F. Constr. Co. v. Virgin River Casino*, 118 Nev. 699, 703, 56 P.3d 887, 890 (2002))); *Ogawa v. Ogawa*, 125 Nev. 660, 667, 221 P.3d 699, 704 (2009) ("Subject matter jurisdiction is a question of law subject to de novo review."). Additionally, "[t]his court reviews a district court's grant of summary judgment de novo, without deference to the findings of the lower court." *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005). "Summary judgment is appropriate . . . when the pleadings and other evidence on file demonstrate that no 'genuine issue as to any material fact [remains] and that the moving party is entitled to a judgment as a matter of law.' " *Id.* (second alteration in original) (quoting NRCP 56(c)).

### Overview of FIRREA

"Congress enacted [FIRREA] to enable the federal government to respond swiftly and effectively to the declining financial condition of the nation's banks and savings institutions. The statute grants the FDIC, as receiver, broad powers to determine claims asserted against failed banks." *Henderson v. Bank of New England*, 986 F.2d 319, 320 (9th Cir. 1993) (citing 12 U.S.C. § 1821(d)(3)(A)). To enable the FDIC's powers, "Congress created a claims process for the filing, consideration[,] and determination of claims against insolvent banks" that encourages the

FDIC to quickly resolve claims without overburdening the courts. *Id.* (citing 12 U.S.C. § 1821(d)(3)-(10)). Accordingly, "[i]f [a] financial institution has failed, . . . subsequent claims must be presented first to the FDIC for an administrative determination on whether they should be paid." *Aber-Shukofsky v. JPMorgan Chase & Co.*, 755 F. Supp. 2d 441, 445 (E.D.N.Y. 2010).

To begin the administrative claims process, the FDIC must publish notice to creditors of the claims process and the date by which creditors must file their claims against the financial institution—the bar date. 12 U.S.C. § 1821(d)(3)(B). The FDIC must also mail such notice to any creditor shown on the institution's books and records or any creditor that the FDIC later discovers. *Id.* § 1821(d)(3)(C). "Once a claim is filed, the FDIC has 180 days to determine whether to allow or disallow the claim." *Henderson*, 986 F.2d at 320 (citing 12 U.S.C. § 1821(d)(5)(A)(i)). "If the claim is disallowed, or if the 180 days expire without a determination by the FDIC, then the claimant may request further administrative consideration of the claim, or seek judicial review." *Id.* (citing 12 U.S.C. § 1821(d)(6)).

Importantly, "[a] claimant must . . . first complete the claims process before seeking judicial review." *Id.* at 321. If the claims process is not followed, then FIRREA bars judicial jurisdiction:

> Except as otherwise provided in this subsection, no court shall have jurisdiction over—
>> (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the [FDIC] has been appointed receiver, including assets which the [FDIC] may acquire from itself as such receiver; or
>> (ii) any claim relating to any act or omission of such institution or the [FDIC] as receiver.

12 U.S.C. § 1821(d)(13)(D); *see also* 9 C.J.S. *Banks and Banking* § 743 (2008) ("A party who has been notified of the appointment of the [FDIC] as receiver, and who fails to initiate an administrative claim within the filing period, forfeits any right to pursue a claim against the institution's assets in any court.").

### *The applicability of FIRREA to this case*

Schettler argues on appeal that FIRREA does not apply here because the proceedings below involved RalRon rather than the FDIC and because the FDIC failed to mail him notice of the specified bar date for filing his claims against Silver State. RalRon argues that because it is a successor in interest to the FDIC, it is entitled to benefit from FIRREA's jurisdictional bar. RalRon further argues that because Schettler was not a creditor, he was not entitled to no-

tice, and, even if he were entitled to notice, the FDIC's failure does not excuse Schettler's duty to comply with FIRREA.

### RalRon, as a successor in interest to the FDIC, is entitled to benefit from FIRREA's jurisdictional bar of claims

FIRREA's jurisdictional bar applies to "any claim or action for payment from . . . or . . . seeking a determination of rights with respect to, the assets of any depository institution for which the [FDIC] has been appointed receiver" and to "any claim relating to any act or omission of such institution or the [FDIC] as receiver." 12 U.S.C. § 1821(d)(13)(D). Schettler argues that the underlying action, which was filed "by a third party" instead of the FDIC, "cannot possibly affect Silver State's receivership estate, and FIRREA should be inapplicable." Conversely, RalRon maintains that its successor status entitles it to benefit from FIRREA's jurisdictional bar. In determining whether the statute allows a successor in interest to a failed financial institution to benefit from FIRREA's jurisdictional bar, we examine the rationale from other jurisdictions that have addressed the issue.

The federal courts, by and large, that have considered the issue have concluded that a successor in interest is entitled to benefit from FIRREA's jurisdictional bar against claims falling within the statute's terms that have not been administratively pursued. For example, the Ninth Circuit Court of Appeals has explained that FIRREA's jurisdictional bar, with respect to claims relating to acts or omissions of the failed bank or receiver, "distinguishes claims on their factual bases rather than on the identity of the defendant," and "does not make any distinction based on the identity of the party from whom relief is sought." *Benson v. JPMorgan Chase Bank, N.A.*, 673 F.3d 1207, 1212 (9th Cir. 2012). Thus, "FIRREA's jurisdictional bar applies to claims asserted against a purchasing bank when the claim is based on the conduct of the failed institution." *Id.* at 1214-15 (also explaining that FIRREA's jurisdictional bar applied because "[t]he bulk of plaintiffs' claims plainly qualif[ied] as *'functionally,* albeit not *formally,'* against a failed bank" (quoting *American Nat. Ins. Co. v. F.D.I.C.*, 642 F.3d 1137, 1144 (D.C. Cir. 2011))).

The Eastern District of New York has explained that successors in interest can benefit from FIRREA's jurisdictional bar because the jurisdictional bar "refers to *'any claim* relating to any act or omission' of a failed institution and does not make its application contingent upon whom the claim is against. Thus, the statutory provision, by its plain language, applies with equal force to a successor in interest to the failed institution." *Aber-Shukofsky*, 755 F. Supp. 2d at 447 (quoting 12 U.S.C. § 1821(d)(13)(D)(ii)). The court concluded that, "given the plain language of FIRREA," the

plaintiffs could not "evade FIRREA's mandatory exhaustion requirement simply by asserting claims against [the] defendants, as third-party purchasers of the failed bank's assets, for acts or omissions that relate to [the failed bank]." *Id.*

The Sixth Circuit and Eleventh Circuit Courts of Appeals have also applied the jurisdictional bar to claims made against a successor in interest to the FDIC. *Village of Oakwood v. State Bank and Trust Co.*, 539 F.3d 373, 386 (6th Cir. 2008) (concluding that to allow claimants to circumvent the provisions of FIRREA's jurisdictional bar " 'by bringing claims against the assuming bank . . . would encourage the very litigation that FIRREA aimed to avoid' " (alteration in original) (quoting *Village of Oakwood v. State Bank and Trust Co.*, 519 F. Supp. 2d 730, 738 (N.D. Ohio 2007))); *American First Federal v. Lake Forest Park*, 198 F.3d 1259, 1263 n.3 (11th Cir. 1999) ("AFF, having purchased the note from the [receiver], stands in the shoes of the [receiver] and acquires its protected status under FIRREA. Thus, if Lake Forest is barred from asserting this claim against the [receiver], it is similarly barred from asserting it against AFF." (internal citations omitted)). We agree with the reasoning of these federal courts and similarly conclude that, with respect to claims relating to acts or omissions of the failed bank, a successor in interest is entitled to benefit from FIRREA's jurisdictional bar.

### *The FDIC's failure to mail Schettler the required notice does not preclude summary judgment*

The parties do not dispute that the FDIC failed to mail Schettler the required notice. Schettler maintains on appeal that because the FDIC did not mail him notice of the bar date, "applying [FIRREA's jurisdictional bar] to the facts of this case would violate due process." We disagree and conclude that Schettler's due process argument lacks merit.[3]

In *Elmco Properties v. Second National Federal Savings Ass'n*, the Fourth Circuit Court of Appeals held that the denial "as untimely the claim of one who never—via formal mailed notice or

---

[3]We note that FIRREA mandates only that the FDIC mail the required notice "to any creditor shown on the institution's books," or to any creditor not on the books that the FDIC later discovers. 12 U.S.C. § 1821(d)(3)(C); *see also Tri-State Hotels, Inc. v. F.D.I.C.*, 79 F.3d 707, 716 (8th Cir. 1996) (explaining that when a claimant "is not a creditor, and is not listed on the books . . . as a creditor, it [is] not entitled to receive notice by mail"). Schettler admits that he does not know whether he became a known creditor. Thus, we make no determination as to whether the FDIC was required to mail Schettler notice.

otherwise—is given constitutionally sufficient notice of the requirement that he file his claim before the bar date . . . violates due process." 94 F.3d 914, 920 (4th Cir. 1996). However, the court also explained that a claimant "may not complain of its lack of formal notice if it actually knew enough about the situation to place it on 'inquiry notice' as to the details of the administrative process." *Id.* at 921. Importantly, the court explained that "if [a claimant] had timely, actual knowledge that [the bank] had entered receivership, its due process argument might be defeated by its own failure to act on that knowledge to protect its rights." *Id.* at 922. Here, on the day the FDIC became the receiver for Silver State, the FDIC notified Schettler that it was the receiver and that "[his] loan [was] now held by the [r]eceiver." The FDIC also published notice of the claims process and the bar date in local Las Vegas newspapers. As such, we conclude that Schettler received constitutionally sufficient notice of the bar date, regardless of his creditor status. *Accord RTC Mortg. Trust 1994-N2 v. Haith*, 133 F.3d 574, 579 (8th Cir. 1998) (explaining that the FDIC is not required to mail notice " 'to claimants who are aware of the appointment of a receiver but who do not receive notice of the filing deadline' " (quoting *Reierson v. Resolution Trust Corp.*, 16 F.3d 889, 891-92 (8th Cir. 1994))).

In addition, the FDIC's failure to mail Schettler notice of the administrative claims bar date does not excuse Schettler from having to exhaust his administrative remedies to pursue claims pursuant to FIRREA's claims process. *See Intercontinental Travel Marketing v. F.D.I.C.*, 45 F.3d 1278, 1284-85 (9th Cir. 1994) (stating that as long as the FDIC does not engage in affirmative misconduct, its failure to notify a creditor or claimant by mail does not excuse that creditor or claimant from having to exhaust FIRREA administrative remedies and noting that while FIRREA "seems to make the mailing requirement imperative for the FDIC, the statute imposes no consequence on the FDIC for failure to do so"); *see also Tri-State*, 79 F.3d at 716 ("[T]he FDIC's failure to provide proper notice [of the administrative claims bar date] 'does not relieve the claimant of the obligation to exhaust administrative remedies, because the statute does not provide for a waiver or exception under those circumstances.' " (quoting *Freeman v. F.D.I.C.*, 56 F.3d 1394, 1402 (D.C. Cir. 1995))). Thus, we conclude that the FDIC's failure to mail Schettler the required notice does not negate FIRREA's applicability to an evaluation of Schettler's claims against RalRon in this case.

In sum, we conclude that RalRon, as a successor in interest to the FDIC, is entitled to benefit from FIRREA's jurisdictional bar for claims made against it, despite the FDIC's failure to mail Schettler the required notice. We now turn our attention to whether FIRREA's jurisdictional bar of claims also bars defenses and af-

firmative defenses asserted by a debtor and whether, here, the district court erred when it rejected Schettler's affirmative defenses.

*FIRREA's jurisdictional bar does not apply to defenses or affirmative defenses*

Convincingly, a majority of courts addressing this issue have held that while FIRREA's jurisdictional bar applies to claims and counterclaims, it does not apply to defenses and affirmative defenses.[4] *See, e.g., American First Federal v. Lake Forest Park,* 198 F.3d 1259, 1264 (11th Cir. 1999) (noting that the "circuit courts that have addressed the question have held that affirmative defenses are not subject to the requirements of exhaustion under [FIRREA's jurisdictional bar]"); *Bolduc v. Beal Bank, SSB,* 167 F.3d 667, 671 (1st Cir. 1999); *Tri-State Hotels, Inc. v. F.D.I.C.,* 79 F.3d 707, 715 (8th Cir. 1996); *Resolution Trust Corp. v. Love,* 36 F.3d 972, 977 (10th Cir. 1994) ("Significantly, the statute never uses the term 'defense', 'affirmative defense' or 'potential affirmative defense.'"); *National Union Fire Ins. v. City Sav., F.S.B.,* 28 F.3d 376, 393 (3d Cir. 1994); *Resolution Trust v. Midwest Fed. Sav. Bank,* 36 F.3d 785, 793 (9th Cir. 1993).

The Third Circuit Court of Appeals, which has examined this issue in detail, has explained that FIRREA's jurisdictional bar only applies to four categories of actions:

> (1) claims for payment from assets of any depository institution for which the [FDIC] has been appointed receiver; (2) actions for payment from assets of such depository institution; (3) actions seeking a determination of rights with respect to assets of such depository institution; and (4) a claim relating to any act or omission of such institution or the [FDIC] as receiver.

---

[4]Although some federal district courts have extended FIRREA's jurisdictional bar to also apply to affirmative defenses, *see, e.g., Federal Sav. v. McGinnis, Juban, Bevan et al.,* 808 F. Supp. 1263, 1280 (E.D. La. 1992) (noting that under FIRREA's jurisdictional bar, a court "does not have jurisdiction to adjudicate the defenses arising out of the FDIC's fault, because the defenses have not been through the administrative process"), others have explained that applying FIRREA's jurisdictional bar to affirmative defenses contravenes the plain language of the statute and would require parties "who have no independent basis for bringing an action against the [FDIC] and against whom the [FDIC] has not brought suit, to present to the [FDIC] as receiver any potential defenses that they might have to any claims that the [FDIC] . . . might one day assert against them, which are as yet unknown." *Resolution Trust Corp. v. Conner,* 817 F. Supp. 98, 102 (W.D. Okla. 1993); *see also Resolution Trust v. Midwest Fed. Sav. Bank,* 36 F.3d 785, 793 (9th Cir. 1993) ("Having reviewed the reasoning behind the holdings on both side[s] of the debate, we are persuaded that [FIRREA's jurisdictional bar] does not divest a district court of jurisdiction over an affirmative defense.").

*National Union*, 28 F.3d at 393. The court held that these categories did not include a defense or an affirmative defense because those are "neither an 'action' nor a 'claim,' but rather . . . a *response* to an action or a claim." *Id.* Therefore, it held, "[t]he jurisdictional bar contained in § 1821(d)(13)(D) . . . does not apply to defenses or affirmative defenses." *Id.* To support its conclusion, the court explained that interpreting FIRREA's jurisdictional bar to include defenses and affirmative defenses "would, in a substantial number of cases, . . . result in an unconstitutional deprivation of due process." *Id.* at 394. Specifically, "[i]f parties were barred from presenting defenses and affirmative defenses to claims which have been filed against them, they would not only be unconstitutionally deprived of their opportunity to be heard, but they would invariably lose on the merits of the claims brought against them." *Id.* Beyond constitutional concerns, the court also explained that because a defendant is unable to know what his or her defense will be before hearing the claim, "it seems that it would be nearly impossible for a party to submit future hypothetical defenses to the administrative claims procedure—defenses to lawsuits which may not yet have [been] brought against [a party] or which may never be brought at all." *Id.* at 395. We join in the majority's reasoning and conclude that while FIRREA's jurisdictional bar applies to claims and counterclaims, it does not apply to defenses or affirmative defenses. We now turn our attention to whether the district court was precluded from considering Schettler's affirmative defenses on the basis that they are more accurately viewed as counterclaims barred by § 1821(d)(13)(D).

### Schettler's affirmative defenses

At the outset, we note that Schettler asserted numerous affirmative defenses below in response to RalRon's complaint. On appeal, however, Schettler limits his argument to the affirmative defense based on breach of contract, claiming that it is allowed under FIRREA. The disputed affirmative defense states as follows: "To the extent that any contract between these parties is supported by adequate consideration, Plaintiffs have failed to fulfill and perform their obligations and duties to Defendant under that contract and is therefore barred from enforcing the same against the Defendants." On appeal, Schettler asserts that this affirmative defense is based on allegations that Silver State wrongfully defaulted Schettler. Similar assertions are made in Schettler's counterclaims.

True affirmative defenses, under NRCP 8(c), include those encompassing " 'new facts and arguments that, if true, will defeat the plaintiff's . . . claim, even if all allegations in the complaint are

true.' "[5] *Clark Cty. Sch. Dist. v. Richardson Constr.*, 123 Nev. 382, 392-93, 168 P.3d 87, 94 (2007) (alteration in original) (quoting *Saks v. Franklin Covey Co.*, 316 F.3d 337, 350 (2d Cir. 2003)) (describing NRCP 8(c)'s "catchall" provision, which states that a plaintiff must affirmatively set forth "any other matter constituting an avoidance or affirmative defense"). Thus, in actions based on a contract, one type of "affirmative defense impliedly admits the sufficiency of the underlying contract, but offers an excuse for the defendant's failure to perform." 17B C.J.S. *Contracts* § 891 (2011); *see also Durell v. Sharp Healthcare*, 108 Cal. Rptr. 3d. 682, 697 (Ct. App. 2010); *Richardson*, 123 Nev. at 394 n.21, 168 P.3d at 95 n.21. Here, based on his general breach of contract allegation, Schettler may be able to demonstrate that Silver State's prior breach of the contract has rendered the contract unenforceable.[6] *See* Restatement (Second) of Contracts § 237 cmt. a (1981); 17A Am. Jur. 2d *Contracts* § 685 (2004). This allegation constitutes a true affirmative defense. Further, the affirmative defense, especially when viewed in light of Schettler's counterclaims, inherently raises recoupment.[7]

---

[5] NRCP 8(c)'s stated permissible affirmative defenses include "accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, [and] waiver."

[6] In its complaint, RalRon alleged that "RalRon has fully performed any and all obligations owed of it under said agreements," as is generally required to plead a claim for breach of contract. *See* 17B C.J.S. *Contracts* § 879 (2011); *see also Durell v. Sharp Healthcare*, 108 Cal. Rptr. 3d. 682, 697 (Ct. App. 2010). In its answer, Schettler alleged that both "Silver State *and* its successor-in-interest, [RalRon], breached th[e] agreement." To the extent that Schettler argues that RalRon breached, this is not a new fact or argument because Schettler already generally denied RalRon's allegation as part of his complaint, and thus, is properly asserted as a defense. *Clark Cty. Sch. Dist. v. Richardson Constr.*, 123 Nev. 382, 392-93, 168 P.3d 87, 94 (2007); *National Union*, 28 F.3d at 393 (" 'The defense may be as simple as a flat denial of the other party's factual allegations . . . .' " (quoting *Black's Law Dictionary* 419 (6th ed. 1990))).

[7] NRCP 8(c) requires the court to treat Schettler's counterclaims as affirmative defenses: "When a party has mistakenly designated a . . . counterclaim as a defense, the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation." Although Schettler did not specifically allege that he was entitled to "recoupment" in his answer to RalRon's complaint, when construed as a whole, his answer sufficiently encompassed the concept of recoupment. *See, e.g., Carlund Corp. v. Crown Center Redev.*, 849 S.W.2d 647, 651 n.3 (Mo. Ct. App. 1993) (noting that although a defendant "in its answer did not specifically plead 'recoupment' as an affirmative defense, its counterclaim inherently plead[ed] the defense of recoupment"). "Recoupment must be pleaded affirmatively, and if it is not raised it is ordinarily deemed waived." *Federal Deposit Ins. Corp. v. Notis*, 602 A.2d 1164, 1165 (Me. 1992). However, "if [a] plaintiff had notice that [a] defendant was relying on recoupment, the affirmative defense will be allowed." *Id.*;

Recoupment is "[a] right of the defendant to have a deduction from the amount of the plaintiff's damages, for the reason that the plaintiff has not complied with the cross-obligations or independent covenants arising under the same contract." *Black's Law Dictionary* 1275 (6th ed. 1990). Recoupment must arise out of the same transaction and involve the same parties; thus, it does not apply when the defendant's allegations arise out of a transaction "extrinsic to the plaintiff's cause of action." *Id.*; *see also Bolduc v. Beal Bank, SSB*, 167 F.3d 667, 672 n.4 (1st Cir. 1999). While the defendant may thus defend against the plaintiff's claim by asserting competing rights arising out of the same transaction and thereby extinguish or reduce any judgment awarded to the plaintiff, recoupment "does not allow the defendant to pursue damages in excess of the plaintiff's judgment award." *Nevada State Bank v. Jamison Partnership*, 106 Nev. 792, 797 n.2, 801 P.2d 1377, 1381 n.2 (1990). Thus, by its very nature and regardless of whether the same facts could constitute a separate claim for damages, recoupment seeks to challenge the foundation of the plaintiff's claim and, consequently, we recognize recoupment as an affirmative defense not barred by FIRREA. *Jamison Partnership*, 106 Nev. at 797, 801 P.2d at 1381; *Bolduc*, 167 F.3d at 672; *F.D.I.C. v. Modular Homes, Inc.*, 859 F. Supp. 117, 123 (D.N.J. 1994). Here, based on his allegations, Schettler may be able to demonstrate that he is entitled to recoup against any amount awarded RalRon on its claims, up to the amount awarded.[8]

---

*see also Williams v. Cottonwood Cove Dev. Co.*, 96 Nev. 857, 860, 619 P.2d 1219, 1221 (1980) (pleadings "must give fair notice of the nature and basis" for the defense). Fair notice was given because it was specifically raised on reconsideration, which is a part of the issues on appeal. Accordingly, we will not treat recoupment as waived.

[8]RalRon argues that even if FIRREA does not bar the district court from considering Schettler's disputed affirmative defense, RalRon is immune from Schettler's defenses because it is a holder in due course under Nevada law and federal common law. We reject this argument. RalRon cannot be a holder in due course pursuant to state law. *See St. James v. Diversified Commercial Fin.*, 102 Nev. 23, 25, 714 P.2d 179, 180 (1986) (citing NRS 104.3302(1)) (outlining the requirements for a holder in due course). "A holder is not a holder in due course when the note is purchased after maturity and while in default, unless the shelter rule applies." 11 Am. Jur. 2d *Bills and Notes* § 271 (2009) (footnotes omitted). Here, Schettler was in default when RalRon purchased the loan documents. Additionally, the shelter rule, which gives a transferee of an instrument the rights of a holder in due course, NRS 104.3203(2), does not apply because the FDIC as receiver is not a holder in due course. *See Cadle Co., Inc. v. Wallach Concrete, Inc.*, 897 P.2d 1104, 1107 (N.M. 1995). RalRon is also not a holder in due course under any federal law. While circuit courts are split on the issue, *F.D.I.C. v. Deglau*, 207 F.3d 153, 170-71 (3d

Because Schettler's affirmative defense raised unresolved questions of material fact, and because affirmative defenses are not barred by FIRREA, the district court erred in granting summary judgment in favor of RalRon on its breach of contract and breach of personal guaranty claims. *See generally First Interstate Bank v. Shields*, 102 Nev. 616, 619-20, 730 P.2d 429, 431 (1986) ("As a general rule, the payment or other satisfaction or extinguishment of the principal debt or obligation by the principal or by anyone for him discharges the guarantor.") Accordingly, we reverse the district court's summary judgment, and we remand this matter to the district court for further proceedings.

DOUGLAS and PARRAGUIRRE, JJ., concur.

---

Cir. 2000), "most federal and state courts agree that the United States Supreme Court has recently rejected supplementing federal statutory law with federal common law to determine whether federal or state law governs holder-in-due-course status." *Cadle Co. v. Patoine*, 772 A.2d 544, 547 (Vt. 2001). At least some courts reaching this conclusion have relied on language from the United States Supreme Court's opinion in *O'Melveny & Myers v. FDIC*, 512 U.S. 79 (1994). "The receiver is required to 'work out its claims under state law, except where some provision in . . . FIRREA provides otherwise. To create additional "federal common-law" exceptions is not to "supplement" this scheme, but to alter it.'" *Bisson v. Eck*, 720 N.E.2d 784, 789 (Mass. 1999) (second alteration in original) (quoting *O'Melveny*, 512 U.S. at 87). We conclude that this rationale is persuasive and that, accordingly, RalRon is not entitled to federal holder-in-due-course status.